# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DONNA EVITTS, INDIVIDUALLY AND AS ADMINISTRATRIX AND BENEFICIARY OF THE ESTATE OF GEORGE EVITTS; JAMES EVITTS, INDIVIDUALLY AND AS BENEFICIARY OF THE ESTATE OF GEORGE EVITTS<br><br>                      Plaintiffs,<br><br>v.<br><br>SYNGENTA AG, SYNGENTA CROP PROTECTION, LLC, CHEVRON U.S.A. INC., JAY BYRNE, AND V-FLUENCE INTERACTIVE PUBLIC RELATIONS, INC.<br><br>                      Defendants. | Case No. 4:23-cv-733<br><br>(Formerly Case No. 2322-CC00611 in the Circuit Court of the City of St. Louis, State of Missouri)<br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF REMOVAL

Defendant Syngenta Crop Protection, LLC ("Syngenta"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby removes the above-captioned action from the Circuit Court of the City of St. Louis, State of Missouri, case number 2322-CC00611, to the United States District Court for the Eastern District of Missouri. In support of removal, Syngenta provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF REMOVED ACTION

1. On March 28, 2023, Plaintiffs Donna Evitts, individually and as administratrix and beneficiary of the estate of George Evitts, and James Evitts, individually and as beneficiary of the estate of George Evitts (collectively, "Plaintiffs") filed this action, *Evitts et al. v. Syngenta AG et al.*, in the Circuit Court of the City of St. Louis, State of Missouri, case number 2322-CC00611,

alleging claims based upon Plaintiffs' exposure to products containing paraquat and subsequent diagnosis with Parkinson's disease.

2. Plaintiffs assert a total of twenty-two causes of action against Defendants Syngenta, Chevron U.S.A., Inc. ("Chevron"), Jay Byrne ("Byrne"), and v-Fluence Interactive Public Relations, Inc. ("v-Fluence," and collectively, "Defendants"), namely: (i) strict products liability design defect against Syngenta; (ii) strict products liability design defect against Chevron; (iii) strict products liability failure to warn against Syngenta; (iv) strict products liability failure to warn against Chevron; (v) strict products liability failure to warn against Byrne; (vi) strict products liability failure to warn against v-Fluence; (vii) negligence against Syngenta; (viii) negligence against Chevron; (ix) negligence against Byrne; (x) negligence against v-Fluence; (xi) breach of implied warranty of merchantability against Syngenta; (xii) breach of implied warranty of merchantability against Chevron; and (xiii) fraud, misrepresentation, and suppression against Syngenta; (xiv) fraud, misrepresentation, and suppression against Byrne; (xv) fraud, misrepresentation, and suppression against v-Fluence; (xvi) fraudulent concealment of cause of action against Syngenta pursuant to Mo. Rev. Stat. § 516.280; (xvii) fraudulent concealment of cause of action against Byrne pursuant to Mo. Rev. Stat. § 516.280; (xviii) fraudulent concealment of cause of action against v-Fluence pursuant to Mo. Rev. Stat. § 516.280; (vix) violation of the Consumer Fraud Acts of Missouri and Illinois against all Defendants; (xx) loss of consortium against all Defendants; (xxi) wrongful death against all Defendants; and (xxii) a survival action.

3. The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Defendants exposed Plaintiffs George Evitts, Donna Evitts, and James Evitts to an increased likelihood of developing Parkinson's disease. George Evitts was diagnosed with Parkinson's disease in 2007 and died on March 24, 2007. Donna Evitts was

diagnosed with Parkinson's disease in 2009.  James Evitts was diagnosed with Parkinson's disease in 2014.

4. This alleged conduct purportedly harmed Plaintiffs in the form of emotional, physical, and financial injuries.

5. Over 3,800 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and the vast majority have been consolidated into a multidistrict litigation in the Southern District of Illinois.  *See In re: Paraquat Prods. Liab. Litig.*, 3:21-md-03004 (S.D. Ill. 2021).  Discovery is proceeding apace in the MDL, with *Daubert* and summary judgment deadlines approaching shortly, and new cases are regularly being directly filed in the MDL or transferred to it.  By filing this case in state court, Plaintiffs seek to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting common issues of law and fact.

6. This case is subject to removal on the grounds of diversity jurisdiction, however, because complete diversity of citizenship would exist between Plaintiffs and Defendants but for the improper joinder of Byrne and v-Fluence as Defendants.

7. Plaintiffs have no hope of prevailing against Byrne or v-Fluence because the claims against these Defendants lack any basis in fact or law.  As a result, Byrne and v-Fluence have been improperly joined as defendants, and the Court should ignore their citizenship for purposes of evaluating jurisdiction.

8. This case is therefore subject to removal on the grounds of diversity jurisdiction because complete diversity of citizenship exists between Plaintiffs and the properly joined

Defendants: Plaintiffs are citizens of Missouri, Syngenta is a citizen of Delaware, and Chevron is a citizen of California and Pennsylvania.

9. In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the Complaint is attached as **Exhibit A** ("Compl."). A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as **Exhibit B**.[1] A copy of an email from Chevron consenting to the removal of this proceeding to this Court is attached as **Exhibit C**.

## TIMELINESS OF REMOVAL

10. Syngenta was served with the Complaint on May 4, 2023, and Chevron was served on May 5, 2023. Syngenta and Chevron have not responded to the Complaint in state court. Accordingly, this notice of removal is timely. *See, e.g.*, 28 U.S.C. § 1446(b) (notice of removal must be filed within 30 days of defendants being served); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## PROPRIETY OF VENUE

11. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the Circuit Court of the City of St. Louis, State of Missouri—where the state court action was pending before removal—is a state court within this federal district and division.

---

[1] Syngenta has attached the most recent state court record available to it as of filing. To the extent that record is not up-to-date, Syngenta will supplement accordingly.

## BASIS OF REMOVAL

### Diversity Jurisdiction

12. Removal is proper under 28 U.S.C. §§ 1332 and 1441 because complete diversity exists between the properly joined parties, and the amount in controversy exceeds $75,000.

13. Plaintiffs Donna Evitts and James Evitts are citizens of the State of Missouri. Compl. ¶¶ 5, 6.

14. Federal courts have jurisdiction of suits by and against an administrator of an estate if the administrator's citizenship is diverse from that of the opposing party. *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 185–86 (1931). For purposes of diversity, the administrator of the estate of Plaintiff George Evitts—Donna Evitts—is a citizen of the State of Missouri. Compl. ¶ 5.

15. Syngenta is an LLC with its headquarters in Greensboro, North Carolina. But an LLC is a citizen of the States in which its members reside, not the State where its principal place of business is located, *see OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346–47 (8th Cir. 2007), and, where applicable, a court must trace an LLC's citizenship through multiple layers of ownership, *see Fountain Plaza Fin., LLC v. Centrue Bank*, No. 4:14CV01388 AGF, 2014 WL 5420793, at *2 (E.D. Mo. Oct. 22, 2014). Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois. The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware. Syngenta is therefore a citizen only of the State of Delaware.

16. Chevron is headquartered in San Ramon, California, and incorporated in the Commonwealth of Pennsylvania, and it is thus a resident of those two States. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

17. Complete diversity therefore exists between the parties but for the fraudulent joinder of Byrne and v-Fluence as Defendants for (i) strict products liability failure to warn; (ii)

negligence; (iii) fraud misrepresentation and suppression; (iv) fraudulent concealment pursuant to Mo. Rev. Stat. § 516.280; (iv) violation of the Consumer Fraud Acts under Missouri and Illinois law; (v) loss of consortium; (vi) wrongful death; and (vii) survival based on their involvement in the marketing and promotion of paraquat.  *See* Compl. ¶¶ 135-154.

## Fraudulent Joinder Standard

18. The fraudulent joinder doctrine provides that a district court may exercise diversity jurisdiction over a removed case lacking complete diversity if the plaintiff filed "frivolous or illegitimate claim[s] against a non-diverse defendant solely to prevent removal." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)."  A removing party demonstrates improper joinder by establishing that "there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (quoting *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)).  Under this standard, if, under governing state law, "the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Id.* (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

## Choice of Law

19. In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law.  *Garner v. Union Pac. R.R. Co.*, No. 4:15CV00733 AGF, 2015 WL 7352281, at *4–5 (E.D. Mo. Nov. 20, 2015).  Missouri applies the "most significant relationship" test stated in the Restatement (Second) of Conflicts of Law.  *Id.*  Under this approach, courts start with the presumption that the law of the state where the injury occurred controls, unless some other state has a more significant relationship to the occurrence and parties,

in which case the law of that state applies. *See* Restatement (Second) of Conflicts of Law § 175 (1971).

20. In determining whether another state has a more significant relationship, the Restatement directs courts to consider four contacts: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, and place of business of the parties; and (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflicts of Law § 145(2) (1971). Considering these contacts, courts must then, and in turn, determine whether a state other than the place of injury has a more significant interest under the principles stated in § 6 of the Restatement: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. *Id.* § 6(2).

21. Under the Restatement analysis, it is presumed that the law of Illinois, the place of injury where the Plaintiffs were exposed to paraquat, governs. *See* Compl. ¶¶ 4-6. Here, no other state has a more significant relationship to the occurrence and parties sufficient to warrant application of another state's law.

22. The only other state implicated by Plaintiffs' allegations against Byrne and v-Fluence is Missouri. Missouri is the place of the alleged misconduct by Byrne and v-Fluence and is also the place of residence for Byrne and the corporate headquarters and principal place of business for v-Fluence. *Id.* ¶ 12. Missouri is also the state of residence for Donna and James Evitts

(though George Evitts, the decedent, was an Illinois resident). The place of the parties' business relationship—*i.e.*, where the Plaintiffs' purchased and used paraquat—is Illinois.

23. Missouri's interest in this action is insufficient to outweigh the presumption that Illinois law applies. Courts in this District and Circuit have recognized time and again that the state where the injury occurred—Illinois—has a greater interest in conduct and injuries occurring within its borders than the state where the parties reside. *See*, *e.g.*, *Garner*, 2015 WL 7352281, at *4-5; *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 524 (8th Cir. 2003) (finding that the state of injury "has the greater governmental interest, because it has the prerogative of regulating conduct within its borders"). This case is no different.

### Plaintiffs Do Not State a Cause of Action Against Byrne or v-Fluence

24. The citizenship of Byrne and v-Fluence should be excluded for purposes of determining diversity jurisdiction because the claims Plaintiffs have asserted against Byrne and v-Fluence lack any basis in fact or law.

***Strict Products Liability Failure to Warn (Counts V and VI)***

25. Plaintiffs allege identical strict products liability failure to warn claims against Byrne and v-Fluence. Compl. ¶¶ 236-49. Plaintiffs contend that Byrne and v-Fluence "participated in the marketing and promotion of Paraquat" and "failed to warn of the potential risk … from low-dose exposure to Paraquat." *Id.* ¶¶ 238, 241, 245, 248.

26. A strict products liability failure to warn theory applies only against defendants "engaged in the business of selling products for use or consumption," such as "any manufacturer of such a product, to any wholesale or retail dealer or distributor." Restatement (Second) of Torts § 402A (1965); *see also Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 196 (Ill. 1980) (Supreme Court of Illinois applying Restatement (Second) of Torts § 402A). Plaintiffs do not claim that Byrne and v-Fluence ever manufactured or sold paraquat; only that they "participated in the

marketing and promotion of Paraquat." Compl. ¶¶ 238, 245. In other words, Plaintiffs are asserting a strict products liability claim against Defendants who did nothing more than promote an allegedly defective product. No state recognizes such a cause of action. *Harmon v. Nat'l Auto Parts Ass'n*, 720 F. Supp. 79, 81 (N.D. Miss. 1989) ("[T]here is apparently no state which extends liability for injuries caused by defective products to those who merely devised the marketing or advertising scheme under which the product is promoted."); *see also* Restatement (Third) of Torts: Products Liability § 20 cmt. g ("Persons assisting or providing services to product distributors, while indirectly facilitating the commercial distribution of products, are not subject to liability under the rules of this Restatement.").

27. For the same reason, these claims fail for lack of proximate causation. It is a "fundamental principle" of Illinois tort law that a plaintiff's alleged injury "must be the natural and not merely a remote consequence of the defendant's [wrongful] act." *Town of Thornton v. Winterhoff*, 92 N.E.2d 163, 166 (Ill. 1950); *see also Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992). In other words, "plaintiffs must prove that a defendant's actions proximately caused their injuries before they can recover in tort, even in instances of intentional torts." *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 747 (Ill. 1994); *see also Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 874 (Ill. App. Ct. 2003). In Illinois, "[t]he term 'proximate cause' embodies two distinct concepts: cause in fact and legal cause." *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1124 (Ill. 2015).

28. Neither element of proximate causation is satisfied against Byrne or v-Fluence here. For one thing, Plaintiffs nowhere assert that **but for** Byrne or v-Fluence's alleged marketing or promoting paraquat, failing to allege that they themselves relied upon such marketing or promotion in purchasing paraquat. Plaintiffs do allege that "[a]s a direct and proximate result of [Byrne's and

9

v-Fluence's'] marketing a defective product," that they suffered injuries. Compl. ¶¶ 242, 249. Yet nowhere in the Complaint do Plaintiffs claim that they were influenced by, let alone saw any of the marketing materials purportedly created by Syngenta upon Byrne and v-Fluence's recommendation. And for another, Byrne or v-Fluence's role in the marketing or promotion of paraquat is totally distinct from the actual manufacture or sale of the product (*i.e.*, its placement in the chain of commerce). *See Harmon*, 720 F. Supp. at 81. Either way, Plaintiffs' allegations insufficiently establish proximate causation here.

*Negligence (Counts IX and X)*

29. Plaintiffs' negligence claims against Byrne and v-Fluence similarly have no basis in law. *See* Compl. ¶¶ 266-81. "In order to state a legally sufficient claim of negligence, a complaint must allege facts establishing the existence of a duty of care owed by the defendants to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). The existence of a duty is a question of law for the court to decide. *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014). To determine whether a duty exists, the court examines whether the plaintiff and defendant "stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Jarosz v. Buona Cos., LLC*, 206 N.E.3d 189, 200 (Ill. App. Ct. 2022).

30. Plaintiffs have not pleaded facts establishing that Byrne and v-Fluence owed them a duty. Instead, plaintiffs advance the novel theory that outside consultants Byrne and v-Fluence owed a duty of care to "persons whom it was reasonably foreseeable could be exposed to Paraquat"—a product that Byrne and v-Fluence neither manufactured nor sold. Compl. ¶¶ 266-81. Plaintiffs allege only that Byrne and v-Fluence "provide[d] research, online monitoring, and counsel" to **Syngenta** "on issues management as it related to Paraquat." *Id.* ¶ 138. The counsel provided by Byrne and v-Fluence was, at most, taken into account by Syngenta in its

communications with paraquat users.  For example, Plaintiffs allege that "v-Fluence recommended that ***Syngenta*** develop simple messaging to contest negative information [about Paraquat], and create Paraquat.com, a website where ***Syngenta*** could implement these tactics." *Id.* ¶ 141 (emphasis added). Nowhere do Plaintiffs allege that Byrne or v-Fluence communicated anything to them about paraquat directly.

31. Moreover, Plaintiffs allege that Byrne and v-Fluence failed "to conduct adequate research and testing" in order to ascertain the risks of paraquat, "[f]ailed to direct that Paraquat be used" in a safe manner, and "[f]ailed to warn that Paraquat was likely to cause neurological damage." *Id.* ¶¶ 270, 279.  Again, these allegations only plausibly apply to the manufacturers and sellers, not Byrne and v-Fluence.

32. And just as with Plaintiffs' strict products liability claim, Plaintiffs' negligence claim fails based on a lack of proximate cause.  To be sure, Plaintiffs similarly make the wholly conclusory claims that "[a]s a direct and proximate result of [Byrne's and v-Fluence's] negligence," Plaintiffs suffered injuries.  *Id.* But again, nowhere in the Complaint do Plaintiffs claim that they were influenced by, let alone saw, any of the marketing materials purportedly created by Syngenta upon Byrne and v-Fluence's recommendation.  Plaintiffs' conclusory allegations that defendants were negligent are fatally insufficient in the absence of specific facts showing that Byrne or v-Fluence proximately caused Plaintiffs' injury.  *See Mazutis v. Karlin*, No. 1-21-0942, 2022 WL 17095046, at *5 (Ill. App. Ct. Nov. 21, 2022).

***Fraud, Misrepresentation, and Suppression; Violation of Consumer Fraud Acts (Counts XIV, XV, and VIX)***

33. To maintain a complaint for common law fraud, or for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") or the Missouri Merchandising Practices Act ("MMPA"), a plaintiff must allege, "with specificity and particularity, facts from

which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996); *see also Huch v. Charter Commc'ns, Inc.*, No. ED89926, 2008 WL 1721868, at *8 (Mo. Ct. App. Apr. 15, 2008); *Gardner v. Bank of Am., N.A.*, 466 S.W.3d 642, 648 (Mo. Ct. App. 2015) (acknowledging that while a "claim alleging violations of the MMPA need not be stated with the same particularity as a claim of common law fraud … [plaintiffs] nevertheless are required to plead ultimate facts showing their entitlement to relief"). Plaintiffs have come nowhere close to meeting this requirement with respect to Byrne and v-Fluence. Plaintiffs rely entirely on unsubstantiated claims that Byrne and v-Fluence perpetuated misrepresentations through "advertisements, packaging, sales aids, furtive public relations efforts, and other marketing and promotional pieces," without identifying *even one single actual example* of material published by v-Fluence or Byrne. Compl. ¶¶ 304-22, 335-44. Because Plaintiffs do not identify any misrepresentations, it is impossible to evaluate whether Byrne and v-Fluence "knew or should have known of the material representations they were making" as Plaintiffs claim. *E.g.*, *id.* ¶¶ 307, 317. Plaintiffs' conclusory allegations that "the Defendants' knew of the alleged defects are insufficient to show that [the nondiverse defendant] had actual knowledge as required [to defeat a finding of fraudulent joinder]." *Owens v. Bos. Sci. Corp.*, No. 4:22-CV-00625-SRC, 2022 WL 17177331, at *3 (E.D. Mo. Nov. 23, 2022).

***Fraudulent Concealment pursuant to Mo. Rev. Stat. § 516.280 (Counts XVII and XVIII)***

34. Plaintiffs allege that Byrne and v-Fluence engaged in fraudulent concealment in violation of Mo. Rev. Stat. § 516.280. Compl. ¶¶ 327-34. However, Mo. Rev. Stat. § 516.280 does not provide an independent cause of action against Byrne, v-Fluence, or any Defendant. Rather, it merely tolls the statute of limitation in the event that "any person, by absconding or concealing himself, or by any other improper act, prevent[s] the commencement of an action."

Mo. Rev. Stat. § 516.280. Therefore, Plaintiffs' Counts XVII and XVIII asserting fraudulent concealment cannot constitute independent causes of action against v-Fluence and Byrne.

***Loss of Consortium, Wrongful Death, and Survival Action (Counts XX, XI [sic], and XXII)***

35. Plaintiffs' loss of consortium, wrongful death, and survival causes of action against Byrne and v-Fluence also fail because, for the reasons described above, Plaintiffs have not pleaded an underlying wrongful act. In both Illinois and Missouri, a loss of consortium claim is derivative of the spouse's valid legal claim for personal injury. *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 113 (Mo. Ct. App. 2006); *Allender v. Guardian Life Ins. Co. of Am.*, 592 F. Supp. 541, 544 (N.D. Ill. 1984). Both the Illinois and Missouri wrongful death statutes require that the death be caused by an underlying wrongful act to recover for damages. *See* 740 Ill. Comp. Stat. 180/1; Mo. Rev. Stat. § 537.080. And neither the Illinois nor Missouri survival statutes creates a cause of action, but merely allow a pre-existing claim for personal injury to survive the death of the injured party. 755 Ill. Comp. Stat. 5/27-6; Mo. Rev. Stat. § 537.020. In short, loss of consortium, wrongful death, and survival all require Plaintiffs to plead an underlying wrongful act, which Plaintiffs have failed to do here.

***Plaintiffs' Personal Injury and Consumer Fraud Claims Against Byrne or v-Fluence Are Barred by the Applicable Statute of Limitations (Counts V, VI, IX, X, and VIX)***

36. Plaintiffs' strict product liability failure-to-warn claims, negligence claims, and Consumer Fraud Act claims (both under ICFA and MMPA) against v-Fluence and Byrne also fail as time-barred under Missouri law.

37. Federal courts "apply the law of the forum state when ruling on an issue involving statutes of limitations." *Myers v. Life Ins. Co. of N. Am.*, No. 4:05CV355SNL, 2005 WL 3555833, at *1 (E.D. Mo. Dec. 28, 2005) (citation omitted). "Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law." *Id.* (citation omitted).

38.     For personal-injury and statutory claims in Missouri, a five-year statute of limitation applies. Mo. Rev. Stat. § 516.120(2), (4).[2]  Where, as here, a claim is based upon a physical ailment, it accrues "at the latest when (i) it is diagnosed, and (ii) a theory as to its cause is ascertainable." *Wegmann v. Ethicon, Inc.*, 2020 WL 5814475, at *7 (E.D. Mo. Sept. 30, 2020) (quoting *Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 566-67 (E.D. Mo. 1996).  The failure to discover the wrongful act, however, "does not prevent the accrual of the action after the damage is sustained and is capable of ascertainment." *Knight v. M.H. Siegfried Real Est., Inc.*, 647 S.W.3d 811, 814 (Mo. Ct. App. 1982) (quoting *Chemical Workers Basic Union v. Arnold Savings Bank*, 411 S.W.3d 159, 164 (Mo. Banc 166)).  Plaintiffs here allege that they were diagnosed with Parkinson's disease in 2007, 2009, and 2014 after they had been exposed to paraquat from 1971-2008.  Compl. ¶¶ 164-66.  Plaintiffs also allege that "the scientific community became aware of the connection between Paraquat and Parkinson's disease" "in 1982." *Id.* ¶ 80.  By Plaintiffs' own allegations, then, the theory as to the cause of their injury was ascertainable at the time of their respective diagnoses, and their personal injury and statutory claims accrued at the latest at the time of their diagnoses. *See also King v. Nashua Corp.*, 763 F.2d 332, 333-34 (8th Cir. 1985) (relying on knowledge within medical community about causation to conclude that cause of action accrued at the time of injury).  And under the Missouri statute, their claim expired five years later (with the latest claim therefore expiring in 2019).  Because Plaintiffs sued in 2023, their personal injury and statutory claims against Byrne and v-Fluence are untimely and have no chance of success under Missouri law.

---

[2] Even if the Court were to apply ICFA's own statute of limitations, that would result in the application of an even shorter statute of limitations, as Illinois law requires ICFA claims be brought "within 3 years after the cause of action accrued." 815 Ill. Comp. Stat. 505/10a. Application of the Illinois statute of limitations would therefore reach the same result: Plaintiffs' Consumer Fraud Act claims, whether under Missouri or Illinois law, are time barred.

39. Plaintiffs' wrongful-death claim on behalf of George Evitts against v-Fluence and Byrne is also time barred. Missouri applies a three-year statute of limitations to wrongful death claims, Mo. Rev. Stat. § 537.100, and that limitations period begins to run at death, without exception. *Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703, 710 (Mo. 2015). Here, George Evitts passed away in 2007, and the statute of limitations on a wrongful death action for his death expired in 2010, more than a decade before Plaintiffs brought their wrongful-death claim.

40. Finally, Plaintiffs cannot rely on Mo. Rev. Stat. § 516.280 to toll the applicable statute of limitations and make their claims timely. That statute provides that "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent[s] the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented." Mo. Rev. Stat. § 516.280. A party that relies on this provision "must plead and prove such fraud and concealment. The burden of establishing fraudulent concealment of [a] cause of action rests upon the plaintiff." *Simply Thick, LLC v. Thermo Pac, LLC*, No. 4:13–CV–1036 CAS, 2014 WL 3543403, at *2 (E.D. Mo. July 17, 2014). A plaintiff's fraudulent concealment allegations must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *Id.* To demonstrate a claim for fraudulent concealment, the plaintiff must plead that that "(1) defendant did, or failed to do, something that caused the injury; (2) defendant's conduct failed to meet the required standards of professional competence and was therefore negligent; (3) defendant had actual knowledge that he or she caused the injury; (4) defendant's acts were fraudulent; and (5) plaintiff did not fail to ascertain the truth earlier because of a lack of diligence." *Ellis v. Nissan N. Am.*, No. 4:19-CV-00750-FJG, 2020 WL 3105097, at *3 (W.D. Mo. June 11, 2020) (citation omitted). Here, and as explained above, Plaintiffs failed to state with particularity the time, place, and content of Defendants' false representations *to*

Plaintiffs, and Plaintiffs have also failed to plead that the alleged fraudulent concealment *caused* Plaintiffs' injuries. Those deficiencies are fatal to Plaintiffs' attempts to toll the statute of limitations under the doctrine of fraudulent concealment.

***Plaintiffs' Strict Product Liability Failure-To-Warn Claims Against Byrne or v-Fluence Are Barred by the Applicable Statute of Repose (Counts VI and V)***

41. Plaintiffs' strict product liability failure-to-warn claims fail for another reason: they are barred by the Illinois statute of repose. Missouri treats statutes of repose as "substantive for choice of law purposes," *Grosshart v. Kansas City Power & Light Co.*, 623 S.W.3d 160, 173 (Mo. App. W.D. 2021), and the Illinois statute of repose is therefore applicable to Plaintiffs' strict products liability failure-to-warn claims. *See supra* ¶¶ 19-23.

42. Under Illinois law, a strict product liability claim expires at a minimum on "10 years from the date of first sale, lease or delivery of possession to its initial consumer, or other non-seller … of any product unit that is claimed to have injured or damaged plaintiff." 735 Ill. Comp. Stat. Ann. 5/13-213(b); *see Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 572 (Ill. App. Ct. 2008) (explaining that the statute of repose is limited to strict product liability claims). Here, Plaintiffs allege that they were last exposed in 2008, and their last relevant purchase must have therefore occurred by 2008, at the latest. Compl. ¶¶ 164-66. Because that is more than 10 years prior to Plaintiffs filing suit, their strict product liability failure-to-warn claims are barred by the Illinois statute of repose.

43. The Illinois statute of repose does provide an extension for a plaintiff to discover injuries that occur within the repose period, but in all events the action must be brought with "8 years after the date on which such personal injury, death or property damage occurred." 735 Ill. Comp. Stat. 5/13-213(d). Here, each plaintiff was diagnosed with Parkinson's disease by 2014, more than 8 years before they filed suit in 2023. As a result, Plaintiffs cannot rely on any belated

16

discovery of their injuries to prevent the statute of repose from barring their strict product liability failure-to-warn claims.

44. For all of these reasons, Plaintiffs have fraudulently joined Byrne and v-Fluence to this action.

**OTHER REMOVAL ITEMS**

45. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined must join or consent to removal.

46. Syngenta consents to removal, as indicated by counsel's signatures below, and Chevron consents to removal as indicated by **Exhibit C** attached hereto.

47. Syngenta hereby demands a jury trial on all triable issues.

48. Because Byrne and v-Fluence have been improperly joined, Syngenta does not require Byrne and v-Fluence's consent for removal. *Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017).

49. By filing this Notice of Removal, Syngenta expressly reserves, and do not waive, any and all defenses that may be available, including those related to personal jurisdiction and service of process. If any question arises as to the propriety of removal to this Court, Syngenta requests the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

50. Pursuant to 28 U.S.C. § 1446(d), Syngenta is contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and will serve notice of the filing of this Notice of Removal on Plaintiffs.

**WHEREFORE**, Syngenta removes this action, now pending in the Circuit Court of the City of St. Louis, State of Missouri, case number 2322-CC00611, to this Court.

Dated: June 2, 2023                                             Respectfully submitted,

                                                               */s/ Michael J. Nester*
                                                               Michael J. Nester, #49410
                                                               DONOVAN ROSE NESTER, P.C.
                                                               15 N. 1st Street, Suite A
                                                               Belleville, IL 62220
                                                               618-212-6500
                                                               mnester@drnpc.com

                                                               ***Attorney for Defendant Syngenta Crop Protection LLC***

**CERTIFICATE OF SERVICE**

I, Michael J. Nester, an attorney, on oath hereby certify that on June 2, 2023, I electronically filed the foregoing, DEFENDANT'S NOTICE OF REMOVAL, with the Clerk of the United States District Court, Eastern District of Missouri, Southeastern Division, using the Court's ECF filing system. Additionally, I further certify that a copy of the foregoing instrument, DEFENDANT'S NOTICE OF REMOVAL, was also served upon the attorneys of record of all parties to the above-styled case by enclosing same in an envelope addressed to such attorneys at their business address as disclosed by the pleadings of record herein, with postage duly prepaid and by depositing said envelopes in a U.S. Post Office Mail Box in Belleville, Illinois.

James T. Corrigan #45127
James D. O'Leary #45964
O'LEARY, SHELTON, CORRIGAN,
PETERSON, DALTON, & QUILLIN, LLC
1034 S. Brentwood Blvd., 23rd Floor
PH 1-A, St. Louis, MO 63117
corrigan@osclaw.com
oleary@osclaw.com
Tel: 314.405.9000
Fax: 314.405.9999

*ATTORNEYS FOR PLAINTIFF*

                                                               */s/ Michael J. Nester*
                                                                 Michael J. Nester