**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION** | Case No. 3:21-md-3004-NJR |
| This document relates to: | MDL No. 3004 |
| *Evitts et al v. Syngenta AG et al*, No. 3:23-pq-02037-NJR | Hon. Judge Nancy J. Rosenstengel |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendants Syngenta Crop Protection, LLC, Syngenta AG (collectively, "Syngenta"), and Chevron U.S.A. Inc. ("Chevron"; collectively, "Defendants") hereby oppose the Motion to Remand, ECF No. 31, filed by Plaintiffs Donna Evitts, individually and as administratrix and beneficiary of the estate of George Evitts, and James Evitts, individually and as beneficiary of the estate of George Evitts (collectively, "Plaintiffs"). Plaintiffs' Motion should be denied—and their attempt to avoid federal court and this MDL, rejected—because they have fraudulently joined defendants Jay Byrne ("Byrne") and v-Fluence Interactive, Public Relations, Inc. ("v-Fluence") to defeat diversity jurisdiction.

## BACKGROUND

On March 28, 2023, Plaintiffs filed this action in the Circuit Court of the City of St. Louis, State of Missouri, case number 2322-CC00611, asserting claims based on Plaintiffs' exposure to products containing paraquat and subsequent diagnosis with Parkinson's disease. ECF No. 1-1 ("Compl."). As relevant here, Plaintiffs bring claims against Byrne and v-Fluence—a Missouri-based public relations consulting firm and its principal—for strict products liability – failure to warn; negligence; fraud, misrepresentation, and suppression; fraudulent concealment; violation of consumer fraud acts; loss of consortium; wrongful death; and survival. Compl. ¶¶ 236-49, 266-

81, 304-322, 327-360.   On June 2, 2023, Syngenta timely removed this action based on the fraudulent joinder of Byrne and v-Fluence—citizens of Missouri—by Plaintiffs to defeat complete diversity.   ECF No. 1 ¶ 8 ("This case is therefore subject to removal on the grounds of diversity jurisdiction because complete diversity of citizenship exists between Plaintiffs and the properly joined Defendants: Plaintiffs are citizens of Missouri, Syngenta is a citizen of Delaware, and Chevron is a citizen of California and Pennsylvania").   On June 16, 2023, Plaintiffs moved to remand the action to state court.   ECF No. 31 ("Mot.").

## LEGAL STANDARD

Defeating diversity jurisdiction is not as simple as naming a non-diverse defendant in the case caption.   When a plaintiff states no viable claim against a non-diverse defendant, the citizenship of that defendant must be "disregarded" for purposes of diversity jurisdiction. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).   That is because a non-diverse defendant is improperly named if there is no "reasonable possibility" that the plaintiff may prevail against him.   *Poulos v. Naas Foods, Inc*., 959 F.2d 69, 73 (7th Cir. 1992).   For example, the Seventh Circuit has explained that there is "no reasonable possibility" that a plaintiff can prevail against a defendant when a plaintiff's claims are time-barred.   *See, e.g.*, *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690, 692 (7th Cir. 1998) (affirming dismissal of fraudulently joined defendants where statute of limitations barred plaintiff's claims); *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (explaining that a statute of limitations defense "may be appropriate [to resolve on the pleadings] when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense").   So "although a plaintiff is normally free to choose its own forum, it may not join an in-state defendant solely for the purpose of defeating

federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999).

When a diversity case is transferred by the Judicial Panel on Multidistrict Litigation, the law applied is that of the transferor court—here, the Eastern District of Missouri. *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). A federal district court in Missouri sitting in diversity follows Missouri's choice of-law rules to determine applicable state law. *Garner v. Union Pac. R.R. Co.*, 2015 WL 7352281, at *4–5 (E.D. Mo. Nov. 20, 2015). For "issue[s] involving statutes of limitations[,]" federal courts "apply the law of the forum state when ruling[,]" and "Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law." *Myers v. Life Ins. Co. of N. Am.*, 2005 WL 3555833, at *1 (E.D. Mo. Dec. 28, 2005) (internal quotation marks omitted). For substantive issues, however, Missouri applies the "most significant relationship" test stated in the Restatement (Second) of Conflicts of Law. *Garner*, 2015 WL 7352281, at *4-6. Under this approach, courts start with the presumption that the law of the state where the injury occurred controls, unless some other state has a more significant relationship to the occurrence and parties, in which case the law of that state applies. *See* Restatement (Second) of Conflicts of Law § 175 (1971). As explained in Defendants' Notice of Remand, the state with the most significant relationship to the events here is Illinois— where Plaintiffs were exposed to paraquat—and so Illinois law applies. ECF No. 1 ¶¶ 19-23.

## ARGUMENT

## I. PLAINTIFFS' CONSUMER FRAUD ACT AND FRAUDULENT MISREPRESENTATION CLAIMS HAVE NO POSSIBILITY OF SUCCESS.

Plaintiffs' common law fraud and Illinois Consumer Fraud Act ("ICFA") claims have no possibility of success for three reasons: (1) Plaintiffs have not identified a single statement made by Byrne or v-Fluence; (2) that Plaintiffs relied on; and (3) that Byrne or v-Fluence knew was

false.[1]  Each of these deficiencies alone establishes that Plaintiffs have no possibility of success on

these claims.

### A.    Plaintiffs Have Not Identified Fraudulent Statements by Byrne and v-Fluence or When Such Statements Were Made.

Plaintiffs' Complaint contains both common law fraud and statutory fraud allegations

against Byrne and v-Fluence.  *See* Compl. ¶¶ 304-322, 335-44.  To show the "reasonable

possibility of success" necessary for remand, a plaintiff's fraud claims must meet Federal Rule

9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  *See In Re Yasmin & Yaz (Drospirenone) Mktg.,*

*Sales Pracs. & Prod. Liab. Litig.*, 692 F. Supp. 2d 1025, 1031, 1038 (S.D. Ill. 2010).[2]  This is true

regardless of whether the claim arises under common law or the ICFA.  *Id.*  And as the Seventh

Circuit has explained, "Rule 9(b) requires particular references to specific alleged fraudulent

activities."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013).  A plaintiff

pleading fraud therefore "must state the identity of the person making the misrepresentation, the

time, place, and content of the misrepresentation, and the method by which the misrepresentation

was communicated."  *In re Yasmin*, 692 F. Supp. 2d at 1038 (internal quotation marks omitted).

Plaintiffs have not even come close to pleading their fraud claims against Byrne and v-

Fluence with requisite particularity.  Rule 9(b) requires describing what statements a defendant

allegedly "made that are deceptive, to whom, and when the deceptive statements were made."

---

[1] Although Plaintiffs pleaded a claim under the Missouri Merchandising Practices Act ("MMPA"), they have conceded that Illinois substantive law—the ICFA—applies rather than the MMPA for the purposes of their Motion.  *See* Mot. at 7 n.3.

[2] Plaintiffs are wrong that the adequacy of their pleadings "does not affect this jurisdictional analysis."  Mot. at 7.  The case Plaintiffs cite for this proposition, *Holmes v. Constr. Turnaround Servs.*, involved an intentional interference with economic advantage claim, not a fraud claim.  2017 WL 2812927, at *1 (S.D. Ill. June 29, 2017).  For fraud claims, courts in the Seventh Circuit have held plaintiffs must meet the pleading requirements of Rule 9(b) in order to prevail on a motion for remand.  *See, e.g.*, *In Re Yasmin*, 692 F. Supp. 2d at 1038; *Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F. Supp. 3d 982, 1005 (N.D. Ind. 2022).

*Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 595-96 (N.D. Ill. 2021); *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010) ("Rule 9(b) requires a plaintiff to specifically identify the alleged fraudulent or deceptive statements that are the basis of the instant action.").  But here, the Complaint does not include *a single particular statement* that Plaintiffs attribute to Byrne or v-Fluence, let alone to whom, when, or where such statement was made.  *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (affirming dismissal with prejudice under Rule 9(b) because plaintiff "fail[ed] to provide the specific names, dates, times, or *content of the misrepresentations or omissions* that give rise to the alleged fraud" (emphasis added)).[3]

Perhaps recognizing this fundamental defect, Plaintiffs resort to inventing new allegations in their Motion.  For instance, although that Motion contends that Byrne and v-Fluence "create[d] Paraquat.com[,]" the Complaint states that "***Syngenta*** created Paraquat.com[,]" which "has been continuously used by ***Syngenta***" to disseminate information about paraquat.  *Compare* Mot. at 4, 9, *with* Compl. ¶ 144 (emphasis added).  Such revisionist history should be flatly rejected: Plaintiffs may not amend their complaint through a remand motion, and even if they could, only the theories in the Complaint "at the time of removal" may be considered because removal jurisdiction "is not affected by post-removal events, including amendments to the pleadings."  *In*

---

[3] Plaintiffs also do not state a claim for fraudulent omission at common law against Byrne and v-Fluence.  Like claims for fraudulent misrepresentation, common law "fraudulent omission claims are subject to the heightened pleading standards under Rule 9(b)[.]"  *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022).  To state a claim for fraudulent omission, a plaintiff must allege that the defendant concealed a material fact which he had a duty to disclose to plaintiff.  *Id.*  The duty to disclose arises where "(1) the plaintiff and defendant are in a fiduciary or confidential relationship; or (2) where the plaintiff places trust and confidence in the defendant," in a situation "extremely similar to that of a fiduciary relationship."  *Id.* (internal quotation marks omitted).  Because Plaintiffs here do not claim they were in a fiduciary relationship with Byrne and v-Fluence (or anything remotely similar), any possible fraudulent omission claims have no possibility of success.  Similarly, to state an ICFA claim based on an alleged omission, a plaintiff must allege "particular direct statements from Defendant that contain material omissions."  *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020).  For the reasons discussed above, because Plaintiffs do not allege a "particular direct statement" from Byrne and v-Fluence, any ICFA claims on that ground would also have no possibility of success.

*Re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 870 F. Supp. 2d 587,

592-93 (S.D. Ill. 2012).  But even after distorting their Complaint to fit their remand narrative,

Plaintiffs *still* cannot point to a single specific statement that Byrne or v-Fluence made to them

that is fraudulent.  Rather, the most Plaintiffs can muster on this point is the generalized (and

conclusory) assertion that Byrne and v-Fluence "made and/or promulgated false statements

through Paraquat.com and traditional media which falsely stated that the science does not support

a link between Paraquat exposure and PD[.]"  Mot. at 10.  Such "boilerplate" and "generic

allegations" do not satisfy Plaintiffs' "obligation of identifying with particularity the conduct in

which [Defendants] allegedly engaged."  *In Re Yasmin*, 692 F. Supp. 2d at 1024.  Rule 9(b) requires

more.  *See Cincinnati Life Ins. Co.*, 722 F.3d at 949 ("[A]ppellant spent a great deal of energy

insinuating that fraud occurred, but failed to identify these all-important details.").

### B.   Plaintiffs Have Not Shown Their Reliance on Statements by Byrne and V-Fluence.

Even if Plaintiffs successfully alleged particular statements from Byrne and v-Fluence,

their fraud claims nevertheless cannot succeed because they have not shown reliance.  "[P]laintiff's

reliance upon the truth of the statement" is a necessary element of common law fraud in Illinois,

as Plaintiffs' own motion admits.  Mot. at 7-8 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482,

496 (1996)).  And although "reliance is not a statutory element [under the ICFA], the claim must

still show that the consumer fraud proximately caused" a plaintiff's injuries.  Mot. Ex. A at 5

(citing *Connick*, 174 Ill. 2d at 501).  As with the other elements of fraud, Rule 9(b) ultimately

requires Plaintiffs to plead reliance or actual deception with particularity.  *Freeman v. MAM USA*

*Corp.*, 528 F. Supp. 3d 849, 865-66 (N.D. Ill. 2021) (applying Rule 9(b) to note "[plaintiff] must

adequately allege that she was actually deceived by a representation of the defendant").

Plaintiffs have not properly done so here.  To succeed on common law and statutory fraud claims, a plaintiff show that they were "actually deceived by the representation or omission."  Mot. Ex. A at 5 (citing *Avery v. State Farm Mutual Auto Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005)); *see also Breeze v. Bayco Prods., Inc.*, 2020 WL 1812404, at *5 (S.D. Ill. Apr. 9, 2020) ("[A]n essential part of a claim under the [ICFA] is that 'the plaintiff must actually be deceived by a statement or omission that is made by the defendant.").  Plaintiffs, however, fall well short of meeting Rule 9(b)'s pleading requirements.  To be sure, they contend vaguely in their motion that they "relied" on Byrne and v-Fluence's misrepresentations, which allegedly induced them to use paraquat "rather than safer alternatives."  Mot. at 11.  But again, as explained above, Plaintiffs nowhere identify the specific misrepresentations that they relied upon in doing so.  That same sort of failure in *Connick v. Suzuki Motor Co., Ltd.* was dispositive.  There, plaintiffs' inability to allege that they had seen any of defendants' advertisements was fatal to their fraudulent misrepresentation claim: "These allegations are inadequate to plead fraud because the complaint fails to state which, if any, of the plaintiffs heard these representations and relied on them."  174 Ill. 2d at 497.  So too here. Plaintiffs' failure to identify any reliance on—or actual deception from—a statement that Byrne or v-Fluence made means their fraud claims have no possibility of success.

### C.    Plaintiffs Have Not Shown Byrne and V-Fluence Knew Their Statements Were False.

Plaintiffs' common law and ICFA claims likewise fail for a lack of knowledge of the falsity by Byrne or v-Fluence.  To plead a claim for common law fraud, a plaintiff must establish "defendant's knowledge that the statement was false," *Connick*, 174 Ill. 2d at 496, and similarly, "knowledge by the defendant is required in order to ascribe liability" under the ICFA, *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 948-49 (Ill. App. Ct.  2005).  Rule 9(b), although relaxed for "conditions of the mind" (such as a defendant's knowledge), still requires that a

plaintiff assert "sufficient underlying facts" to allow the court to infer that defendants' acted with the required state of mind, such as "when and where the allegedly false statements were made, to whom [defendants] made these statements, and what was said to induce justifiable reliance." *Richmond v. Advanced Pain Consultants, S.C.*, 2015 WL 7710371, at *4 (N.D. Ill. Nov. 30, 2015).

Plaintiffs have failed to meet that bar here for either fraud claim.  For starters, because Plaintiffs have not identified any particular false statements—let alone when or where those statements were made—it is impossible to determine whether Byrne and v-Fluence knew such statements were false.  If anything, Plaintiffs' own allegations make clear that Byrne and v-Fluence *rejected* the alleged link between paraquat and PD, showing anything but knowledge of alleged falsity.  *Cf.* Compl. ¶ 154g (noting that Byrne and v-Fluence would "[w]ork with Syngenta and their consultants on drafting position statements, media statements, and op-eds expressing the opinion that there is no connection between Paraquat and Parkinson's disease").  Plaintiffs nevertheless allege that "Defendants either knew or should have known of the material representations they were making regarding the safety and relative utility of Paraquat products." Compl. ¶¶ 307 (count against Byrne), 317 (count against v-Fluence).  Yet such conclusory statements that "the Defendants' knew of the alleged defects are insufficient to show that the nondiverse defendant had actual knowledge as required to defeat a finding of fraudulent joinder." *Owens v. Bos. Sci. Corp.*, 2022 WL 17177331, at *3 (E.D. Mo. Nov. 23, 2022) (alterations omitted); *see also Akers v. Costco Wholesale Corp.*, 631 F. Supp. 3d 625, 637 (S.D. Ill. 2022) (Rosenstengel, J.) ("[T]he conclusory allegation in the Complaint, that [Defendant's] fraudulent intent is evinced by knowledge that the Product was not consistent with its representations, fails to adequately allege the required scienter." (internal quotation marks omitted)).

Plaintiffs' attempt to carve out their ICFA claim from this general rule also misses the mark.  In their remand motion, Plaintiffs claim that "a defendant's knowledge about the underlying misrepresentation is irrelevant and need not be pleaded [to support an ICFA claim] because 'the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations.'"  Mot. at 11 (quoting *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (2001)).  But Plaintiffs confuse a defendant's *intention* with a defendant's *knowledge* that a statement is false.  Indeed, *Lipinski*, the case Plaintiffs offer in support of their proposition, explains that in order "allege[] a deceptive act"—a necessary element of an ICFA claim—the plaintiff had to show that defendant "knew of the general defect before" selling the product to plaintiff.  *Lipinski*, 759 N.E.2d at 72.[4]  Thus, for both the common law and statutory fraud claims, Plaintiffs' failure to show that Byrne or v-Fluence knew their statements were false bars such claims.

## II.   PLAINTIFFS' STRICT LIABILITY CLAIMS HAVE NO POSSIBILITY OF SUCCESS.

Plaintiffs likewise cannot succeed on their strict liability claims against Byrne or v-Fluence for failure to warn.  Under Illinois law, "[t]he general rule is that strict product liability does not extend to services."  *Milford v. Com. Carriers, Inc.*, 210 F. Supp. 2d 987, 990 (N.D. Ill. 2002).

---

[4] In their remand motion, Plaintiffs cite two cases where St. Louis city courts allowed fraud claims to proceed against a public relations company that promoted Roundup (the "Roundup Cases").  As an initial matter, the Roundup Cases did not analyze the fraud claims against the Rule 9(b) pleading standards that apply in this Court.  But setting aside the different standards, plaintiffs in the Roundup Cases pleaded fraud with far more particularity than the Plaintiffs here.  First, in *Peterson et al., v. Monsanto Company, et al.*, the court held that plaintiffs stated a fraud claim against the public relations company based on an actual quoted misrepresentation describing Roundup's manufacturer as an "'anti-cancer crusader' and a 'company that "puts the farmer first"'" made during the course of an "ad campaign[.]" Mot. Ex. A at 6.  Similarly, in *Wade v. Monsanto Co.*, the court cited numerous quotes by the public relations firm— including its "America's Farmers Grow America" campaign and description of the Roundup container as a "no glug jug"—as a basis for denying the public relations firm's motion for summary judgment on the fraud claims.  Mot. Ex. B at 8.  Far from being "less compelling" than the fraud claims here, the Roundup Cases are based on quoted misrepresentations made by the defendant during specific advertising campaigns; Plaintiffs here have failed to meet this bar.

Illinois courts have "pointed out that there are many parties who have some relation to the manufacture and sale of a product, but are not directly related to the distributive process contemplated by product liability theories," *Alvarez v. Koby Mach. Co.*, 516 N.E. 2d 930, 934 (Ill. App. Ct. 1987), including "[f]or example, a patent licensor, a consultant, an independent engineering firm, an independent testing laboratory, a law firm or, for that matter, a transportation company or an independent warehouse[.]" *Mech. Rubber & Supply Co. v. Caterpillar Tractor Co.*, 399 N.E.2d 722, 723-24 (Ill. App. Ct. 1980). Accordingly, "[c]ourts in strict liability cases must find that the defendant sold a product rather than services before imposing liability." *Brandt v. Bos. Sci. Corp.,* 792 N.E.2d 296, 302 (Ill. App. Ct. 2003).

Services, though, are exactly what Byrne and v-Fluence allegedly sold here, as Plaintiffs' own Complaint—and remand motion—make clear. Plaintiffs' Complaint is replete with allegations that Byrne and v-Fluence provided Syngenta with "public relations, risk assessment and risk management" services, not any tangible product. *E.g.*, Compl. ¶ 154 (listing Byrne and v-Fluence's "services" provided to Syngenta as "[r]eview[ing]," "[r]eciev[ing], "[a]dvis[ing]," among other things). So is Plaintiffs' remand motion, in which they double down on their decision to frame Byrne and v-Fluence as service, and not product, providers. *See, e.g.*, Mot. at 15 ("A core purpose of Byrne and v-Fluence's ***services*** to Syngenta . . . ." (emphasis added)). Because Byrne and v-Fluence sold only services to Syngenta, they cannot be held strictly liable for any alleged harm from paraquat as a product. *See Brandt*, 792 N.E.2d at 302.

Plaintiffs' own cited case, *Firkin v. U.S. Polychemical Corp.*, 835 F. Supp. 1048 (N.D. Ill. 1993), only proves this point. There, the court permitted a strict liability claim against a company who printed a warning label for a chemical—*i.e.*, a tangible item—reasoning that "it was not a service to [the manufacturer] but, rather, a warning provided to the user." *Id.* at 1053. Here, Byrne

and v-Fluence did no such thing.  *See, e.g.*, Compl. ¶ 154.  The closest Plaintiffs come to falling under *Firkin*'s ambit is when they assert Byrne and v-Fluence's involvement in "product safety information" through "various means including the content on Paraquat.com[.]"  Mot. at 13-14. But it is Syngenta, not v-Fluence or Byrne, who Plaintiffs allege ultimately published that website. Compl. ¶ 144 ("At the recommendation of Jay Byrne and v-Fluence, and with Jay Byrne and v-Fluence's assistance, **Syngenta** created Paraquat.com . . . .").  Consultation on a website's content (or other "various means") is very different from the production of a label in *Firkin* and, as a result, that case cannot justify imposing the strict liability that Plaintiffs propose here.

Plaintiffs also cite a case imposing strict liability against an entity that "play[ed] an integral role in the marketing enterprise" and "participate[d] in the profits derived from placing the product into the stream of commerce[.]"  Mot. at 12; *see Bittler v. White and Co. Inc.*, 560 N.E.2d 979, 981 (Ill. App. Ct. 1990) ("Even parties who are not within the actual chain of distribution, but who play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, are held liable under the doctrine of strict liability.").  But even under that "profits-from-marketing" test that Plaintiffs press here, their strict liability claim still fails as a matter of law.   Although Plaintiffs allege Byrne and v-Fluence advised on brand protection, Plaintiffs 362-paragraph complaint contains *zero* allegations that they "derived profits" from paraquat's placement in the stream of commerce. Instead, the fact that Byrne and v-Fluence had a contractual agreement for services, Compl. ¶ 12, is the ordinary type of "legal relationship with a manufacturer or with other entities in the manufacturing-marketing system" that is typically insufficient to apply strict liability. *See Hebel v. Sherman Equip. Co.*, 442 N.E.2d 199, 205 (Ill. 1982).  That relationship is far afield from that of a sales representative whose payment for marketing services is *directly* tied to the sale of a

product through commissions under *Bittler*'s "profits-from-marketing" theory. *Cf.* 560 N.E.2d at 981-82 ("White was bound by its exclusive sales representative contract with D.P. Way to promote sale of D.P. Way products and, through this relationship, derived an economic benefit in the form of a commission from all D.P. Way sales made within its territory[.]"). *Bittler* simply does not control here.

What's more, Plaintiffs' strict liability claims independently fail based on a lack of proximate causation. In Illinois, "[p]roximate cause encompasses two requirements: cause-in-fact and legal cause." *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 856 (N.D. Ill. 2017). "The first requirement, cause in fact, is present when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Young v. Bryco Arms*, 821 N.E.2d 1078, 1085-86 (Ill. 2004) (internal quotation marks omitted). "In deciding this question," courts "first ask whether the injury would have occurred absent the defendant's conduct." *Id.* But even where "there are multiple factors that may have combined to cause the injury," courts must still "ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury." *Id.*

That critical component of materiality is lacking here. *Cf. Firkin*, 835 F. Supp. at 1050 (imposing strict liability where Plaintiff asserted "that he read and relied on the information on the product label"). To show proximate cause based on what Byrne and v-Fluence did or did not say to them, Plaintiffs must show some sort of reliance. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 161 (Ill. 2002) ("[I]n the common law tort of fraudulent misrepresentation, the causal link between the wrongdoer and the damage to the plaintiff is provided by the concept of reliance."). But as explained above, nowhere do Plaintiffs plead that they were exposed to paraquat based on particular statements (or, in Plaintiffs' view, "alleged misrepresentations") that Byrne or v-Fluence

made to them directly or even indirectly though services that they provided to Syngenta.  *See supra*

Section I.B.   The Complaint, for example, contains no allegations that Plaintiffs visited

Paraquat.com, let alone relied upon it.  *See Kane v. R.D. Werner Co., Inc.*, 275 Ill. App. 3d 1035,

657 N.E.2d 37 (1st Dist. 1995) (explaining that "since plaintiff failed to read the warning labels,

the alleged inadequate content of those warnings could not have proximately caused his injuries").

No matter how much Plaintiffs contend otherwise, v-Fluence or Byrne's tangential involvement

here was ***not*** "one that produces an injury through a natural and continuous sequence of events

unbroken by any effective intervening cause." *Kleen*, 749 N.E.2d 26, 28-29 (Ill. App. Ct. 2001)

(defining proximate cause).  Far from it.

Instead, all Plaintiffs can point to as supportive of proximate causation are generalized

allegations that do not identify any particular statement and concern *all* Defendants, not v-Fluence

or Byrne specifically.  *Cf.* Mot. at 13-14; ¶¶ 200, 306, 312, 316, 322, 337, 343 (allegations referring

to "Defendants" collectively).  "A plaintiff," however, "may not rely on conclusions of law or fact

unsupported by specific factual allegations." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092,

1099 (Ill. 2012).  It is likewise no response to say, as Plaintiffs do, that this is jury question: Courts

routinely determine that "it is appropriate to determine the question [of proximate cause] as a

matter of law," when "the complaint fails to disclose any allegations that, even if true, would

establish proximate cause." *E.g.*, *Kleen*, 749 N.E.2d at 29.  This Court should do the same.

## III.   PLAINTIFFS' NEGLIGENCE CLAIMS HAVE NO POSSIBILITY OF SUCCESS.

Plaintiffs' negligence claims against Byrne and v-Fluence similarly lack any basis in law.

To begin, Plaintiffs premise their negligence theory on a failure to warn, alleging that Byrne and

v-Fluence "knew or should have known that users would not realize the dangers of exposure to

Paraquat and negligently failed to take reasonable steps to prevent the foreseeable risk of harm

from exposure to Paraquat."  Compl. ¶¶ 272, 280; *see* Mot. at 15 (arguing same).  But "[t]o prove

13

a claim for failure to warn, a plaintiff must demonstrate that the *manufacturer* did not disclose an unreasonably dangerous condition or instruct on the proper use of the product to which the average consumer would not be aware." *Carlen v. Coloplast Corp.*, 2020 WL 5645308, at *2 (S.D. Ill. Sept. 22, 2020) (emphasis added) (internal quotation marks omitted). And, as another court in this District has explained, "[a] duty to warn arises when a *manufacturer* has greater knowledge of a product's dangerous propensities than a consumer has." *Id.* (emphasis added) (internal quotation marks omitted). Byrne and v-Fluence, however, are not manufacturers, and as a result, owe no duty under a failure to warn theory. *See Clark v. River Metals Recycling, LLC*, 2017 WL 1862214, at *3 (S.D. Ill. May 9, 2017) ("There is not a single allegation within the complaint that River Metals owed a duty of care [under a failure to warn theory], that it breached that duty, or that the plaintiff Richard Clark's injuries resulted from such a breach.").

Plaintiffs' own cases again cut against them on this point. Relying on *Firkin* once more, Plaintiffs cite it for the proposition that when "a Defendant 'chose to print warning labels' about a dangerous chemical[,] 'it assumed a special responsibility' to the consumer to ensure that the safety information was accurate" and created a duty for itself in the process. Mot. at 14 (quoting *Firkin*, 835 F. Supp. at 1052). Plaintiffs similarly point to *Neeley v. Wolters Kluwer Health, Inc.*, 2013 WL 3929059 (E.D. Mo. July 29. 2013) as "analogous Missouri law" wherein a "company providing safety information about a product it ***did not manufacture*** was found to have a duty." Mot. at 14 (emphasis added). Yet both these favored authorities are inapposite. For one thing, *Firkin* involved a defendant who provided a tangible product, not an intangible service like Byrne or v-Fluence—even assuming that Plaintiffs relied upon paraquat.com or other sources in which Byrne or v-Fluence were alleged involved in creating (Plaintiffs did not). And for another, *Neeley* imposed a duty under Missouri law on defendants who "failed to warn of [a product's] dangers

when they ***published*** monograph information regarding the potential increased risk."  2013 WL 3929059, at *10 (emphasis added).  But here, it was Syngenta—not Byrne or v-Fluence—that Plaintiffs allege published the misleading "information" at issue.  *E.g.*, Compl. ¶ 141.  And finally, even if Plaintiffs could possibly plead a duty here, their negligence claims still fail based on a lack of proximate causation, just like their strict liability claims.  *See supra* Section II.  Either way, Plaintiffs' negligence claims have no chance of success against Byrne or v-Fluence.

## IV.   PLAINTIFFS FRAUDULENT CONCEALMENT CLAIMS HAVE NO POSSIBILITY OF SUCCESS.

Plaintiffs' fraudulent concealment claims fare no better.  In their Complaint, Plaintiffs allege that Byrne and v-Fluence engaged in fraudulent concealment in violation of Mo. Rev. Stat. § 516.280.  Compl. ¶¶ 327-34.  But § 516.280 does not provide for an independent cause of action against Byrne, v-Fluence, or any other Defendant.  Rather, it merely tolls the statute of limitation in the event that "any person, by absconding or concealing himself, or by any other improper act, prevent[s] the commencement of an action[.]"  Mo. Rev. Stat. § 516.280.  Plaintiffs cannot use a statutory tolling provision to bring a freestanding claim against Byrne or v-Fluence that would defeat diversity jurisdiction.

Against this straightforward reading, Plaintiffs cite several Missouri cases purportedly supportive of their novel pleading theory.  Mot. at 16-17 (citing *Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 259 (Mo. Ct. App. 2006); *Batek v. Curators of University of Missouri*, 920 S.W.2d 895, 900 (Mo. 1996) (en banc); *Boland v. Saint Luke's Health Sys.*, 588 S.W.3d 879, 884 (Mo. 2019) (en banc).  But these cases do not hold that the statute provides an independent means of recovery.   Rather, they confirm that a "fraudulent concealment action … postpone[es] the running of the statute of limitations until the plaintiff discovers, or by exercise of reasonable diligence could have discovered, that he has a cause of action."  *Batek*, 895 S.W.2d at 900 (internal

15

quotation marks omitted); *see also Doe v. Ratigan*, 481 S.W.3d 36, 44–45 (Mo. Ct. App. 2015) (confirming that "*Batek* does not recognize a distinct cause of action for fraudulent concealment of a tort but instead addresses the allegations necessary to claim that a defendant's fraudulent concealment of his own negligent conduct tolls the statute of limitation for negligence"). Missouri law therefore squarely forecloses Plaintiffs' attempt to manufacture a brand-new cause of action against Byrne and v-Fluence to avoid litigating their case in federal court.

## V.   PLAINTIFFS' PERSONAL INJURY, CONSUMER FRAUD, AND WRONGFUL DEATH CLAIMS ARE UNTIMELY.

Beyond the substantive deficiencies with Plaintiffs' claims previously identified, several of them cannot succeed for the additional reason that they are time barred.

Plaintiffs acknowledge that a five-year statute of limitations applies to Plaintiffs' personal-injury (negligence and strict liability) and statutory consumer fraud claims in this case. Mot. at 17-18; Mo. Rev. Stat. § 516.120(2), (4); *see also Myers*, 2005 WL 3555833, at *1. And as Defendants have acknowledged, the application of this statute of limitations depends on Missouri's discovery rule, which teaches that a claim accrues when the latent injury has been diagnosed, and a theory as to its cause is ascertainable. *See generally Wegmann v. Ethicon, Inc.*, 2020 WL 5814475, at *7 (E.D. Mo. Sept. 30, 2020). Moreover, "[b]ecause the capable of ascertainment standard is an objective one, where relevant facts are uncontested, the statute of limitations issue can be decided by a court as a matter of law." *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 585 (Mo. 2006) (en banc).[5] Where the purported causal link was previously known to the medical community, Missouri courts have repeatedly concluded that a plaintiff was on inquiry notice of those claims, and they were capable of ascertainment as a matter of law. *See*

---

[5] While *Powel*, a repressed memory case, sets out general rules for the application of Missouri's discovery rule, the actual application of those rules in that case is not relevant to Plaintiffs' claims, as the Missouri Supreme Court recognized that the general rule has "special application to cases of repressed memory." 197 S.W.3d at 584.

*King v. Nashua Corp.*, 763 F.2d 332, 333-34 (8th Cir. 1985) ("Although King may not have discovered her injuries were likely caused by the thermal labels until 1982, the medical community was aware of the causation link as early as 1975."); *Ahearn v. Lafayette Pharmacal, Inc.*, 729 S.W.2d 501, 503-04 (Mo. Ct. App. 1987) ("Although plaintiff may not have learned that this condition could have been caused by pantopaque until 1983, the medical community, as early as the 1940's, was aware of the possible causation link between arachnoiditis and the use of pantopaque in myelography."); *Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 567 (E.D. Mo. 1996) (same).

Here, Plaintiffs' claims were capable of ascertainment after their diagnosis because they allege that the scientific community has been aware of the purported causal link between paraquat and PD since 1982. Comp. ¶ 80.[6] That alone is sufficient to trigger the statute of limitations under Missouri law. *See, e.g.*, *Ahearn*, 729 S.W.2d at 504. But Plaintiffs go so far as to claim to have even investigated this hypothesis by reading scientific literature "generated by Defendants" "regarding the safety of Paraquat products[.]" Compl. ¶¶ 306, 316. As a result, Plaintiffs can hardly claim that a reasonably prudent person in their position would not have ascertained the medical community's purported knowledge of the hypothesis potentially linking paraquat and PD. In fact, Plaintiffs' only factual retort is that they subjectively did not know paraquat could cause PD because they were never told by a doctor of the possible cause. Mot. at 19. Yet such a subjective assertion of what Plaintiffs actually knew about the association between paraquat and PD is not relevant to the objective inquiry about when Plaintiffs' causal theory was capable of

---

[6] Defendants of course vigorously dispute Plaintiffs' assertion, but that factual dispute is not germane to the resolution of this Motion. Instead, Plaintiffs, just like the Defendants, are bound by the facts that they have pleaded at this stage of the case, and under *those* facts, they have fraudulently joined Byrne and v-Fluence in an attempt to defeat diversity jurisdiction. As a result, Defendants properly removed this case to federal court.

ascertainment. *See v. 3M Co.*, 2010 WL 4000620, at *6 (E.D. Mo. Oct. 12, 2010) ("Moreover, the Missouri Supreme Court has rejected a subjective test for determining when an injury was 'capable of ascertainment'"). That Plaintiffs did not ask their doctor about the possible causes of their conditions is immaterial to the objective inquiry into when their causal theory was capable of ascertainment.

Plaintiffs seek to side-step the consequences of their own pleaded allegations by incorrectly asserting that those cases are no longer good law. Mot. at 18. *First*, Plaintiffs try to cast aside Missouri law by claiming that pre-*Powel* cases concerning the capable-of-ascertainment standard have been overruled. Not so. The case Plaintiffs rely on for that overbroad proposition—*Levitt*— itself considered and distinguished pre-*Powel* cases. *See Levitt v. Merck &Co.*, 914 F.3d 1169, 1173 (8th Cir. 2019). Rather than reverse the district court because it relied on pre-*Powel* cases at all, as Plaintiffs suggest, *Levitt* engaged with the facts of those cases and distinguished them on their own terms. *Id.* at 1174 ("Here the state of the scientific literature connecting Vioxx to cardiovascular injuries before September 29, 2001 was more akin to *Giles* than to *Ahearn* and *Buttice*[.]"). Moreover, Missouri federal courts continue to rely on pre-*Powel* cases when concluding that latent injury claims are barred by the statute of limitations. *See Savage*, 2010 WL 4000620, at *5 (citing *Grady v. Amrep, Inc.*, 139 S.W.3d 585, 589 (Mo. Ct. App. 2004)); *Midkiff v. 3M Co.*, 2010 WL 1687123, at *3 (E.D. Mo. April 26, 2010) (same).

*Second*, Plaintiffs similarly overstate the application of *Levitt* (and *Wegmann*) by emphasizing the result and failing to appreciate that the facts of those cases do not fit their pleaded allegations here. *Cf. United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) ("Judicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration."). In *Levitt*, the court addressed a situation where "an injury was only

beginning to be linked to a certain cause by developing science." *Levitt*, 914 F.3d at 1172.  The court acknowledged that, under Missouri law, an injury was capable of ascertainment based on decades of knowledge within the medical community about a causal link.  *Id.* at 1173.  But it distinguished those cases on their facts because the purported causal link in *Levitt*, unlike those other cases, "was only beginning to emerge in the scientific community[,]" and it therefore predicted that such a "possible link" did not, as a matter of law, place a reasonable person on notice of a potentially actionable injury.  *Id.* at 1174.  The court in *Wegmann* relied on this language from *Levitt* and reached the same conclusion in a case addressing a claim where a causal link that had only emerged five years before the statute of limitations period.  *Wegmann*, 2020 WL 5814475, at *8.

Plaintiffs' problem, of course, is that *they* have alleged—to justify their patched-together misrepresentation claims against Byrne and v-Fluence—that the scientific community has been aware of the purported causal link between paraquat and PD since 1982, more than four decades ago.  Compl. ¶ 80.  The court's reasoning in *Levitt* thus supports following established Missouri law and concluding that Plaintiffs' claims were capable of ascertainment at least at the time of their diagnosis.  *See, e.g.*, *King*, 763 F.2d at 333-34; *Ahearn*, 729 S.W.2d at 504.  Plaintiffs may choose to make broad factual assertions for the purpose of attempting to state a claim with a possibility of recovering; but Plaintiffs must also accept the consequences of their decision to make such broad claims.  Here, in their attempt to manufacture a claim against Byrne and v-Fluence to defeat diversity jurisdiction, Plaintiffs have pleaded factual allegations that would have placed

their claims outside the applicable statute of limitations as a matter of law.[7] Those claims present

no possibility of recovery as a result.[8]

## VI.   PLAINTIFFS' STRICT PRODUCT LIABILITY CLAIMS ARE BARRED BY THE ILLINOIS STATUTE OF REPOSE.

Plaintiffs' strict liability failure-to-warn claims against Byrne and v-Fluence are also barred

by the Illinois statute of repose. Plaintiffs acknowledge that the face of the statute bars their claims,

and instead argue only that fraudulent concealment should toll the statute of repose merely because

this Court has previously accepted allegations of fraudulent concealment at the motion to dismiss

stage in a different case *against different defendants*.  Plaintiffs make no effort to even discuss how

those allegations are comparable to their allegations against *Byrne* and *v-Fluence*.  Indeed, as

discussed in detail above, *supra* Sections I-II, Plaintiffs have no possibility of success in

establishing that Byrne or v-Fluence can be held strictly liable or that they engaged in fraudulent

conduct that could toll the statute of repose.  Plaintiffs therefore have no possibility of success on

their strict liability failure-to-warn claims against Byrne and v-Fluence.[9]

---

[7] Plaintiffs' final argument to save their claims against Byrne and v-Fluence is one sentence claiming that "Defendants' fraudulent concealment would also provide an additional basis to preserve Plaintiffs['] other claims under Missouri law." Mot. at 20.  Yet, as explained above, *supra* Section IV, Plaintiffs allegations of fraud have no possibility of success, and so therefore could not serve as a basis to toll the statute of limitations as to their claims under Missouri law.

[8] Plaintiffs' wrongful death claim has no possibility of success for the exact same reasons.  Though Plaintiffs correctly note that Illinois applies a discovery rule to personal injury, consumer fraud, and wrongful death claims alike, they do not offer *any* analysis as to how the application of that rule would differ, and apparently concede that possible recovery for their wrongful death claim should rise and fall with their personal injury and statutory claims.  For the reasons discussed above, *supra* V.A., Plaintiffs' wrongful death claim is barred by Illinois' two-year statute of limitations. *See* 740 Ill. Comp. Stat. 180/2.  And unlike their other claims, Plaintiffs fail to even allege that fraudulent concealment under Illinois law could toll the statute of limitations as to their wrongful death claim.  *See* Mot. at 20 (arguing that fraudulent concealment tolls *only* the Illinois statute of repose and "Plaintiffs other claims under Missouri law.").  In any event, Plaintiffs have failed to set forth allegations that could justify tolling the statute of limitations for the same reasons discussed above, *supra* Section V.A.

[9] As explained in Defendants' Notion of Removal, Plaintiffs' loss of consortium, wrongful death, and survival causes of action against Byrne and v-Fluence also fail because, for the reasons described above, Plaintiffs have not pleaded an underlying wrongful act.  *See* ECF No. 1 ¶ 35.  Plaintiffs do not dispute this reality in their Motion.

## CONCLUSION

For these stated reasons, this Court should deny Plaintiffs' Remand Motion.

Dated:  July 17, 2023                              Respectfully submitted,

                                                  */s/ Ragan Naresh*
                                                  Ragan Naresh, P.C.
                                                  Patrick L. Butler
                                                  KIRKLAND & ELLIS LLP
                                                  1301 Pennsylvania Ave., N.W.
                                                  Washington, D.C. 20004
                                                  Tel.: 202.389.5000
                                                  Fax: 202.389.5200
                                                  ragan.naresh@kirkland.com
                                                  patrick.butler@kirkland.com

                                                  Leslie M. Smith, P.C.
                                                  Bradley H. Weidenhammer, P.C.
                                                  KIRKLAND & ELLIS LLP
                                                  300 North LaSalle Chicago, IL 60654
                                                  Tel.: (312) 862-2000

                                                  Michael J. Nester, #02037211
                                                  DONOVAN ROSE NESTER P.C.
                                                  15 North 1st Street, Suite A
                                                  Belleville, IL 62220
                                                  Tel.: (618) 212-6500
                                                  Fax: (618) 212-6501
                                                  mnester@drnpc.com

                                                  **Counsel for Syngenta Defendants**

### CERTIFICATE OF SERVICE

I certify that on July 17, 2023, I served Syngenta's Opposition to Plaintiffs' Motion to Remand on all parties of record through the CM/ECF system.


*/s/ Ragan Naresh*
Ragan Naresh